UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MATSCO, a division of WELLS FARGO BANK, N.A., | |
| Petitioner, | 2:09-CV-02242-LRH-RJJ |
| v. | |
| JOHN HANG D.D.S., PROF. CORP., a professional Nevada corporation; JOHN HANG, an individual; and DOES I through X; and ROE Corporations I through X, inclusive, | ORDER |
| Defendants. | |

Before the court is Plaintiff MATSCO's ("Plaintiff") Motion for Default Judgment (#14[1]). Defendants John Hang D.D.S., Prof. Corp., ("Hang D.D.S.") and John Hang (collectively "Defendants") have not responded.

**I.    Facts and Procedural History**

On March 24, 2004, Hang D.D.S. and Plaintiff, a division of Greater Bay Bank,[2] entered into a Master Equipment Financing Agreement ("Agreement"). (Mot. Default J. (#14), Coutinho Aff. ¶ 7.) Through the Agreement, Plaintiff loaned Hang D.D.S. money to purchase dental

---

[1] Refers to the court's docket entry number.

[2] Greater Bay Bank is the predecessor in interest to Plaintiff, a division of Wells Fargo Bank.

1  equipment. (Coutinho Aff., Ex. 1.)

2       Pursuant to the Agreement's Schedule, Hang D.D.S. agreed to make payments for 84
3  months, beginning on May 10, 2004, of $0.00 for the first three months, followed by 81 monthly
4  payments of $6,405.38, with no balloon payment, for a total loan amount of $518,835.78.
5  (Coutinho Aff., Ex. 2.)

6       On April 9, 2004, John Hang executed an unconditional personal Guaranty ("Guaranty"),
7  guarantying the obligations of Hang D.D.S. under the Agreement. (Countinho Aff., Ex. 3.)

8       On March 11, 2004, Cupertino National Bank filed a UCC-1 Financing Statement
9  ("Financing Statement") with the California Secretary of State, identifying John Hang as the debtor.
10 As a result, Plaintiff holds a properly perfected security interest in the following ("Collateral"):

11     (A)(1) All Accounts, Chattel Paper, and other rights to payment of the Debtor, whether now owned or hereafter acquired; (2) all inventory of the Debtor, whether now owned
12     or hereafter acquired; (3) all Equipment of the Debtor, whether now owned or hereafter acquired; (4) all General Intangibles and Contract Rights of the Debtor including
13     without limitation all patient records and patient charts, whether now owned or hereafter acquired; (b) All of the above, together with all substitutions and replacements for and
14     products of any of the foregoing personal property, together with all accessions, attachments, parts, and modifications and repairs now or hereafter attached or affixed
15     to or used in connection with any such personal property.

16 (Coutinho Aff., Ex. 4.)

17      On April 12, 2004, Plaintiff filed an amendment to the Financing Statement with the
18 California Secretary of State, identifying Hang D.D.S. as an additional debtor under the Financing
19 Statement. (Coutinho Aff., Ex. 5.)

20      Hang D.D.S. defaulted on the Agreement by, among other things, missing payments from
21 February 2009, through October 2009. (Countinho Aff. ¶ 13.) Plaintiff received its last payment
22 from Hang D.D.S. on January 20, 2009. (*Id.*)

23      On May 26, 2009, Hang D.D.S. abandoned the dental practice. (Coutinho Aff. ¶ 15.) As a
24 result, on July 22, 2009, Plaintiff notified Defendants of its intent to sell the Collateral, pursuant to
25 the terms of the Agreement, in a Notice of Private Sale ("Notice"). (Coutinho Aff. ¶ 16.)

26                                      2

When Plaintiff scheduled removal of the equipment, Plaintiff discovered that several pieces of equipment were missing, including X-ray machines and accessories, two dental chairs, all dental hand pieces, patient charts, and computers and accessories.  (Coutinho Aff. ¶ 17.)

Under the Notice, Defendants had 10 days from the date of the Notice to redeem the Collateral, but failed to do so.  (Coutinho Aff. ¶ 18.)  On November 10, 2009, a buyer purchased the Collateral available at the time of the Notice for $20,000.  (Coutinho Aff. ¶ 19.)

On November 23, 2009, Plaintiff commenced the above-captioned action against Defendants (#1).  On January 12, 2010, Plaintiff served Defendants with the Summons and Complaint (##6, 7).  After being served, Defendants did not answer, respond, appear, or otherwise communicate with Plaintiff or the court.  (Coutinho Aff. ¶¶ 23, 28.)  Thus, on February 4, 2010, the Clerk of the Court entered a default against Defendants (##12, 13).  Plaintiff now seeks an entry of default judgment. (Countinho Aff. ¶¶ 31, 32.)

**II.     Discussion**

Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure 55.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, Rule 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true.  Nonetheless, while entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted).  Instead, whether a court will grant a default judgment is in the court's discretion.  *Id.*  (citations omitted).

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. The court will consider these factors below.

**A. Prejudice**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff served process on Defendants more than 4 months ago. (*See* Countinho Aff. ¶¶ 22, 27.) Since that time, Defendants have not answered, made an appearance, or otherwise responded to the complaint. Due to Defendants' refusal to appear in this action, and the likelihood that Defendants will continue to refuse to pay the remainder of the loan owed to Plaintiff, the possibility of prejudice to Plaintiff in the absence of a default judgment is great. Thus, this *Eitel* factor weighs in favor of entering default judgment.

**B. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint**

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8"of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

Plaintiff alleges, Hang D.D.S. "breached the Agreement by failing or refusing to pay the agreed upon payments to [Plaintiff] as set forth in the Schedule under the Agreement." (Compl. ¶ 29.) Plaintiff also states, John Hang "breached the Guaranty by, among other things, failing to pay the Plaintiff amounts owed and payable under the Guaranty." (Compl. ¶ 38.) As a result, Plaintiff

contends that Defendants are liable for losses arising from Hang D.D.S.'s breach of the Agreement, John Hang's breach of the Guaranty, and both Defendants' unjust enrichment.

As of February 9, 2010, the outstanding accelerated balance due under the Agreement was $172,945.26, excluding attorneys' fees and costs and any repossession costs. (*See* Countinho Aff., Ex. 10.) After deducting the proceeds from the sale of the Collateral, the outstanding balance due is approximately $152,945.26. (*See id.*) Thus, Plaintiff seeks $152,945.26 from Defendants. (*See* Compl. ¶¶ 32, 49.)

Plaintiff's complaint states plausible claims for relief under Rule 8, and Plaintiff has provided ample evidence supporting its breach of contract claims.[3] In a breach of contract action, a plaintiff "must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Brown v. Kinross Gold U.S.A., Inc.* 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) (citing *Richardson v. Jones & Denton*, 1 Nev. 405 (Nev. 1865)). Plaintiff has provided a copy of the Agreement and sufficient evidence that Defendant Hang D.D.S. is liable for breaching the contract by missing payments from February 2009, through October 2009. (*See* Countinho Aff., Ex. 1.) Likewise, Plaintiff has provided evidence that Defendant John Hang entered into, and later breached, the Guaranty by failing to pay Plaintiff after Hang D.D.S. missed payments. Because the allegations in the complaint and the evidence Plaintiff has submitted indicate a strong likelihood that Plaintiff will be successful on the merits, the second and third *Eitel* factors favor entering a default judgment.

**C. Sum of Money at Stake**

Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Plaintiff has provided evidence that it made an agreement with Defendant Hang D.D.S. to loan Defendant

---

[3] As to the unjust enrichment claim, such a claim cannot lie where there exists a valid express contract covering the subject matter. *See also LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (citing AM. JUR. 2D *Restitution* § 6 (1973)).

5

1  $518,835.78, which Defendant agreed to pay back over a period of 84 months.  (*See* Countinho
2  Aff., Ex. 1.)  In addition, John Hang executed a Guaranty, unconditionally guarantying the
3  obligations of Hang D.D.S. under the Agreement.  (*See* Countinho Aff., Ex. 3.)  Further, Plaintiff
4  provided evidence that Hang D.D.S. missed payments from February 2009, through October 2009,
5  defaulting on the Agreement.  (*See* Coutinho Aff. ¶ 13.)  As a result of Defendant's default,
6  Plaintiff seeks to recover $152,945.26.  (*See* Countinho Aff. ¶ 31.)  This is a substantial sum
7  supporting default judgment.

8        **D.  Possible Dispute**

9        The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case.
10  *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Here, given the sufficiency of the complaint (#1), "no
11  genuine dispute of material facts would prejudice granting [Plaintiff's] motion."  *See id.*

12        **E.  Excusable Neglect**

13        The sixth *Eitel* factor considers the possibility that the default resulted from excusable
14  neglect.  The evidence shows that Plaintiff properly served Defendants with the Summons and
15  Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure (##4-7).  *See* FED. R. CIV. P.
16  4.  Therefore, it is unlikely that Defendants' failure to respond and subsequent default resulted from
17  excusable neglect.

18        **F.  Decision on the Merits**

19        The seventh *Eitel* factor considers that "[c]ases should be decided upon their merits
20  whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, the "mere existence of [Rule
21  55(b)] indicates that this 'preference, standing alone, is not dispositive.'"  *PepsiCo, Inc.*, 238 F.
22  Supp. 2d at 1177 (citation omitted).  Moreover, Defendants' failure to answer Plaintiff's complaint
23  makes a decision on the merits impractical, if not impossible.  Thus, the court is not precluded from
24  entering default judgment against Defendants.

25        IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment (#14) is

26        6

hereby GRANTED. The Clerk of the Court shall enter judgment against Defendants in the amount of $152,945.26.

IT IS FURTHER ORDERED that Plaintiff shall have thirty (30) days from the entry of judgment to file a motion for attorneys' fees that complies with Local Rule 54-16.

IT IS SO ORDERED.

DATED this 1st day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE